UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

In re:                                                      )
JILLIAN'S ENTERTAINMENT          )          CASE NO. 04-33192
HOLDINGS, INC., ET AL.,                    )          CHAPTER 11
                    Debtor(s)                   )
_____  )

**MEMORANDUM ON REQUEST OF KATY MILLS MALL LIMITED PARTNERSHIP FOR ORDER REQUIRING PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 503(a) AND 507(a)(1)**

This matter comes before the Court on the Request of Katy Mills Mall Limited Partnership For Order Requiring Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(a) and 507(a)(1). In the application, Katy Mills Limited Partnership ("Katy Mills") seeks allowance and the immediate payment of $697,129.61 as an administrative expense. This amount represents unpaid post-petition rent due and owing to Katy Mills from May 24, 2004 through December 31, 2004. The Plan Administrator, Steven L. Victor, (the "Plan Administrator") objected to the application. For the reasons set forth below, the Court grants the application for allowance and payment of administrative expense.

**FINDINGS OF FACT**

1. On December 31, 1998, Katy Mills and the Debtor entered into a Shopping Center Lease, which was amended by the First Amendment to the Shopping Center Lease dated August 6, 1999 ( the "Lease") for the restaurant facility located in Katy, Texas. According to the Lease terms, the Lease would expire on November 14, 2009.

2. On May 24, 2004, the Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Western District of Kentucky, Louisville Division.

3. The Debtor and Katy Mills started negotiations for reducing the Debtor's post petition rent payments until the Debtor formally assumed or rejected the Lease.

4. The parties entered into a Second Amendment to Shopping Center Lease (the "Second Amendment") effective June 1, 2004.

5. Pursuant to the Second Amendment, Katy Mills agreed to reduce rent payments from approximately $90,000 down to $25,000, which significantly alleviated the cash flow of the Debtor.

6. Paragraph 4 of the Second Amendment provides that, in the event the underlying Lease is rejected in the course of the Debtor's bankruptcy case, the Debtor would not object to an administrative expense claim of Katy Mills equal to the difference between the reduced rent and the rent owed under the original Lease. Paragraph 4 further provides that, in the event of a rejection of the Lease, the Second Amendment terminates automatically and the provisions of the Lease govern for all purposes with respect to Katy Mills' claims against the estate, including, but not limited to, the calculation of any administrative expense claims.

7. The Court entered a Confirmation Order on December 2, 2004. Pursuant to the Confirmation Order, the Lease was deemed rejected effective December 31, 2004. No party appealed the entry of the Confirmation Order.

8. The Confirmation Order also appointed Mr. Steven L. Victor as Plan Administrator. Mr. Victor would act as a de facto trustee for the Debtor for purposes of plan implementation, claims resolution, and avoidance actions.

9. At the time of Lease rejection, Katy Mills' administrative expense claim for accrued post-petition rent totaled $697,129.61.

## CONCLUSION OF LAW

Katy Mills now seeks allowance and payment of the administrative claim in accordance with the Second Amendment. The Plan Administrator opposes the application primarily arguing that

Katy Mills' failure to disclose the Second Amendment should bar the administrative claim and limit Katy Mills to the $25,000 monthly rent already paid.  This position ignores the fact that no party in the case disclosed this temporary rent reduction to the Court and the Court declines to determine whether this temporary arrangement required disclosure.  But assuming *arguendo* that it did, the duty of disclosure did not rest solely upon Katy Mills.  Rather that duty fell upon all professionals and parties involved, especially the debtor benefitting from the rent reduction.  Considering the extensive number of professionals such as Debtor's counsel, committee counsel, financial advisors, and accountants, the Court finds it difficult to believe that the operative terms of the Second Amendment escaped actual notice.

The Plan Administrator also advances the argument that Mr. Stevens, the Debtor's representative who signed on behalf of the debtor, did not realize that the Second Amendment contained administrative claim provisions.  Furthermore, had he known this, he would not have signed the Second Amendment.  The Court finds this argument completely devoid of merit.  First, Mr. Stevens, the Debtor's Chief Financial Officer, can be characterized as a sophisticated person with a general understanding of contracts.  Second, highly competent and qualified attorneys represented the Debtor and participated in the drafting of the Second Amendment.  Finally, the Second Amendment consists of only four (4) pages with clear and concise provisions uncluttered with inordinate amounts of "legalese," and paragraph 4 of the Second Amendment expressly and succinctly addresses the administrative claim issue.  Any argument that Mr. Stevens "did not realize" the contents of the document he signed on behalf of the Debtor simply belies the facts.

Finally, were the Court inclined to set aside the entire Second Amendment due to the non-disclosure, the amount owed to Katy Mills would be governed by the original Lease and would still be allowed as an administrative expense under 11 U.S.C. § 503 and established Sixth Circuit law.

*Koenig Sporting Goods, Inc. v. Morse Road Company*, 203 F.3d 986 (6th Cir. 2000). It is generally accepted that post petition, pre-rejection rent is accorded administrative expense status under 11 U.S.C. § 503(b). *See also CIT Communications Finance Corporation v. Midway Airlines Corp.*, 406 F.3d 229 (4th Cir. 2005). The Plan Administrator did not advocate any meaningful argument why this Court should not adhere to this established precedent. Certainly the estate has already reaped the cash flow benefit of the reduced rent and the mere payment of the regular monthly rent hardly constitutes a windfall or any other preferential entitlement to Katy Mills to the detriment of the estate. In short, the outcome remains unchanged had the agreement never existed, except that Katy Mills has been required to incur additional and probably unnecessary attorney fees to enforce its claim and lost the use of $675,000 for one year. Clearly, Katy Mills is entitled to payment of its claim forthwith.

      The Court shall enter an Order this same date in accordance with the holding of this Memorandum.

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| In re: ) | |
| JILLIAN'S ENTERTAINMENT ) | CASE NO. 04-33192 |
| HOLDINGS, INC., ET AL., ) | CHAPTER 11 |
| Debtor(s) ) | |
| _____ ) | |

## ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

It is hereby **ORDERED** that the Request of Katy Mills Mall Limited Partnership For Order Requiring Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(a) and 507(a)(1) be, and is hereby, **GRANTED**; it is further

**ORDERED** that Stephen Victor, the Plan Administrator, is hereby authorized and directed to pay Katy Mills Mall Limited Partnership $697,129.61 as an allowed administrative expense.