UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| JILLIAN'S ENTERTAINMENT HOLDINGS, et al. | ) | Case No. 04-33192 |
|           Debtors | ) | Chapter 11 |
| _____ | ) | |
| | ) | |
| ORIX PLC HOUSTON VENTURE | ) | A.P. No. 06-3129 |
|           Plaintiff | ) | |
| v. | ) | |
| STEVEN L. VICTOR, Plan Administrator; | ) | |
| JILLIAN'S OF HOUSTON, TEXAS, INC.; | ) | |
| TANGO OF HOUSTON, INC.; and | ) | |
| DAVE & BUSTER'S, INC. | ) | |
|           Defendants | ) | |

**MEMORANDUM**

This matter comes before the Court on the Ninth Omnibus Objection to Claims filed by Steven L. Victor, the Plan Administrator ("Administrator") and the Motion for Leave and for Enlargement of Time to File Administrative Expense Claim filed by Orix PLC Houston Venture ("Orix"). Both of these motions were filed in the main bankruptcy case. Motions for summary judgment filed in the adversary proceeding by Orix, the Administrator, and Dave & Buster's, Inc. ("Dave & Buster's") and Tango of Houston, Inc. ("Tango") are also before the Court. Upon consideration of the motions, the responses filed thereto, and the record in this case, the Court rules as follows:

**I.    STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (N) and (O). Venue is proper under 28 U.S.C. §1409(a).

**II.    SUMMARY JUDGMENT STANDARD**

The Court can render summary judgment only when there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Bank. P. 7056(c). Summary judgment is appropriate when the record taken as a whole, and viewed in the light most favorable to the nonmoving party, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). The party seeking summary judgment bears the burden initially of showing that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may rely on the pleadings, depositions, answers to interrogatories, and admissions on file. *Id*. When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, summary judgment should be granted. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) (quoting *Celotex*, 477 U.S. at 322).

Once the moving party has made a proper motion for summary judgment, the nonmoving party may not rely upon mere allegations to rebut the motion, but instead must set forth specific facts demonstrating that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e). The nonmoving party must produce more than a "mere scintilla" of evidence to support its claim, once a properly supported motion for summary judgment has been made.

### III.    UNDISPUTED FACTS

1. On or about July 16, 1999, Orix, as landlord, and Defendant Jillian's of Houston, Texas, Inc. ("Jillian's"), as tenant, entered into a lease agreement (the "Lease") concerning certain real property located in Houston, Texas.

2. On or about January 31, 2000, Jillian's and Orix entered into a First Modification of Lease Agreement (the "First Modification").

3. Jillian's failed to pay Orix rent for April and May 2003 in the aggregate amount of $223,875.00 (the "Deferred Rent").

4. On July 1, 2003, Jillian's and Orix entered into a "First Amendment to Lease" (the "First Amendment"). Under the First Amendment, Orix "[agreed] to defer payment of the total amount of the Base Rent due on the first day of the months of April 2003 and May 2003 in the total amount of $223,875.00 until September 1, 2005, when the total deferred Base Rent and any other Rental then due shall be paid by [Jillian's]."

5. On May 23, 2004, Jillian's, along with 46 of its affiliates (the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

6. On May 24, 2004, the Debtors filed with this Court an Asset Purchase Agreement (the "APA"), requiring certain of the Debtors' assets to be sold, transferred, and assigned to subsidiaries of Dave & Buster's pursuant to §§ 363 and 365 of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and interests. The assets to be transferred included an assignment of real property leases associated with various of Debtors' properties, including the Lease with Jillian's.

7. Section 4 of the APA provided:

> Sellers' Representations and Warranties. Each Seller represents and warrants to Buyer that the statements contained in this § 4 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this §4), except as set forth in the Disclosure Schedule delivered by Sellers to Buyer on the date hereof (the "Disclosure Schedule").
>
> (j) Real Property.
>
> (i) § 4(j) of the Disclosure Schedule sets forth the address of each

parcel of Leased Real Property, and a true and complete list of all Leases for each such parcel of Leased Real Property. Sellers have made available to Buyer a true and complete copy of each such Lease document, including all amendments, renewals and modifications thereof and all correspondence material to the performance of the Lease.

8. Section 8 of the APA provided:

> No survival of Representations and Warranties. None of the representations and warranties of Sellers or Buyer contained in this Agreement or made in any other documents or instruments delivered pursuant to this Agreement shall survive the Closing hereunder.

9. The Debtors also filed a Disclosure Schedule with the APA on May 24, 2004 (the "Disclosure Schedule"). Section 4(j) of the Disclosure Schedule only disclosed the Lease between Orix and Jillian's and the First Modification; it did not disclose the First Amendment providing for the payment of the Deferred Rent. Consequently, the Debtors breached the warranties set forth in Section 4 of the APA, but due to the provisions of Section 8 of the APA, these warranties expired with the closing of the sale on November 1, 2004.

10. Section 2(a) of the APA provided that Dave & Buster's and Tango did not assume or agree to pay any "Retained Liabilities." Retained Liabilities are defined in the APA as "all of the liabilities, obligations or indebtedness of any nature whatsoever of Sellers other than the Assumed Liabilities."

11. Assumed Liabilities are defined in the APA as follows:

> "Assumed Liabilities" means all of the (i) liabilities and obligations under the Assumed Contracts in respect of periods after the Closing, (ii) liabilities and obligations relating to and arising from the Buyer's operation of the Acquired Stores and the Purchased Assets after the Closing, (iii) . . ., (iv) the liabilities and obligations in respect of periods after the Closing in respect of the letter of credit . . . , (v) liabilities and obligations in respect of periods after the Closing under the

4

> Brand License Agreement. . ., (vi) liabilities and obligations in respect of periods after the Closing under the Denver Brand License Agreement. . ., (vii) liabilities and obligations in respect of periods after the Closing under the Denver Management Agreement. . ., (viii) liabilities and obligations in respect of periods after the Closing under the Las Vegas Brand License Agreement. . ., (ix) subject to Section 2(a) (iv) liabilities and obligations in respect of periods after the Closing under the Gwinnett Limited Partnership Agreement. . ..

12. On May 24, 2004, the Debtors filed a motion to sell substantially all of the Debtors' assets (the "Sale Motion") pursuant to the terms and provisions of the APA. The Sale Motion provided, *inter alia*, that certain unexpired leases were to be assumed and assigned pursuant to the APA — including the Lease and First Modification.

13. On or about July 20, 2004, a Notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases was served on Orix, which Notice contained a schedule identifying the Lease as one that the Debtors might seek to assume and assign and listed a proposed cure amount of $0.00. The Notice set a deadline of August 18, 2004, for any objections to the proposed cure amount. Because Jillian's was current on its Lease obligations, with the Deferred Rent not due until September, 2005, Orix filed no objection to the $0.00 cure amount.

14. On September 21, 2004, the Debtors conducted a public auction of substantially all of its assets. On September 24, 2004, Dave & Buster's and Gemini Investors III, LP (as the successful bidders at the auction) and the Debtors entered into an Asset Purchase Agreement (the "September APA"). The September APA contained identical representations and warranties of the Debtors as to full disclosure of all leases, amendments, and modifications as the original APA. The Disclosure Schedule (real property leases and amendments) to the September APA is identical to the Disclosure Schedule attached to the original APA.

15. On September 24, 2004, the Court entered its Order Granting Motion to Sell Under Sections 105(a), 363, 365 and 1146(c) of the Bankruptcy Code (A) Authorizing the Debtors' Sale(s) of all of their Assets, Free and Clear of Liens, Claims, Encumbrances, (B) Approving Asset Purchase Agreement, and (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Such Sale (the "Sale Order"). The Sale Order approved the sale of all of the Debtors' assets, approved the September APA, and authorized the assumption and assignment of certain executory contracts and unexpired leases in connection with the sale, including the Lease.

16. With respect to the bankruptcy estates, the Sale Order provided that the cure amounts set forth in the Cure Notice, unless otherwise ordered or agreed upon, were deemed to be the entire cure obligations of the Debtors under § 365 of the Bankruptcy Code and that, upon payment of such amounts, no other amounts would be owed by the Debtors with respect to the executory contracts and unexpired leases being assumed and assigned. Furthermore, the Sale Order provided that the Debtors and the estates were relieved of liability for any post-assignment breach pursuant to § 365(k) of the Bankruptcy Code. Finally, the Sale Order provided that the unexpired leases being assumed and assigned included any and all amendments and modifications with respect thereto.

17. With respect to the buyers, the Sale Order expressly provided that the buyers would be liable only for liabilities arising from and after the closing under the assumed contracts.

18. Jillian's, as assignor, and Tango, as assignee, entered into the Assignment and Assumption of Lease (the "Assignment") on November 1, 2004. The Assignment provided that the assignee would fulfill the assignor's obligations accruing from and after the effective date.

Following its assumption of the Lease, Tango possessed and operated the real property and timely paid monthly rent pursuant to the Lease.

19. Prior to November 1, 2004, Orix received no communications from Tango or Dave & Buster's regarding the Lease, any amendments or modifications to the Lease, or to the obligations of the tenant under the Lease. Additionally, prior to this date, neither Tango nor Dave & Buster's requested an examination of the lease documents or requested a confirmation of what constituted all lease-related documents. It was not until November 30, 2004, over twenty days after the Assignment, that Dave & Buster's requested from Orix all the documents related to the Lease

20. On August 26, 2005, Orix contacted Tango about payment of the Deferred Rent due on September 1, 2005, by virtue of the First Amendment. On October 24, 2005, Tango responded by advising Orix that it had not assumed the Deferred Rent obligation contained in the First Amendment.

21. In a series of orders and amended orders beginning September 9, 2005, and ending September 30, 2005, this Court set an initial bar date of November 15, 2005, for filing administrative expense claims.

22. On January 25, 2006, Orix and Tango entered into a Second Amendment to Lease (the "Second Amendment") and Guaranty (the "Guaranty"). The recitals of the Second Amendment state that

> [l]andlord and Original Tenant entered into a certain Lease dated July 16, 1999, as amended by First Amendment to Lease dated effective July 1, 2003 (as amended, the "Lease"), under which Landlord leased to Tenant a portion of the entertainment center commonly known as Marq*E Houston Development located in Houston, Harris County, Texas . . . . Original Tenant assigned all of its rights, title and interest under the Lease to Tenant and Tenant assumed all of Original Tenant's obligations

       under the Lease pursuant to that certain Assignment and Assumption of Lease dated November, 2004, by and between Original Tenant, as assignor and Tenant, as assignee.

23.     The Guaranty states that

       [a]nnexed to and forming a part of Lease dated July 16, 1999, as amended by First Amendment to Lease dated effective July 1, 2003 and Second Amendment to Lease dated of even date herewith (as amended, the "Lease"), by and between ORIX PLC HOUSTON VENTURE, an Illinois general partnership, ("Landlord") [sic] and TANGO OF HOUSTON, INC., a Delaware corporation d/b/a Tango Entertainment Houston, Inc., successor-in-interest to Jillian's of Houston, TX., Inc., a Delaware corporation, ("Tenant") [sic]. The undersigned, DAVE AND BUSTER'S, INC., a Missouri corporation (hereinafter sometimes referred to as the "Guarantor" or "Guarantor(s)"), whose address is 2481 Manana Drive, Dallas, Texas, 75220, in consideration of (a) the leasing of the leased premises described in the Lease to Tenant, and (b) the amendment of the Lease pursuant to the Second Amendment to Lease dated of even date herewith, does hereby covenant and agree as follows . . ..

24.     When Tango did not pay the Deferred Rent, Orix filed an administrative expense claim on or about March 1, 2006, to recover the Deferred Rent in the amount of $223,875.00.

25.     On May 25, 2006, the Administrator objected to Orix's administrative expense claim as not owing or as untimely filed. The Administrator requested that the Late Claim be disallowed in full and expunged.

26.     On August 11, 2006, Orix filed its First Amended Complaint in this adversary proceeding seeking recovery of the Deferred Rent from Tango and Dave & Buster's or, alternatively, from the Administrator and the Debtors.

**IV.**     **CONCLUSIONS OF LAW**

     The Court will first address the issues relating to the main bankruptcy case, the Administrator's objection to Orix's claim, and Orix's Motion for Leave and for Enlargement of Time to File Administrative Expense Claim. There is no question that Orix filed this claim after the bar date. This Court set an administrative claims bar date of November 15, 2005. This claim was

filed on March 1, 2006, a little more than 3 months later. While the Court did set a supplemental administrative claims bar date of March 10, 2006, this supplemental bar date was limited to a select few individuals, all of whom had personal injury claims.

Even if Orix timely filed this claim, the Court would still not allow it as an administrative expense against the estate. As the Administrator correctly argues, the Sale Order is very specific with respect to the estate's obligations with respect to the Lease post-sale. The Sale Order provided the cure amount would be the only obligation owed by the Debtors with respect to the executory contracts and unexpired leases being assumed and assigned. The cure amount on the Lease was set at $0.00. This amount was noticed to all parties in the Cure Notice and, without objection, was established by Court order. As such, the bankruptcy estate is not liable for the deferred rent.

As the bankruptcy estate is not liable for the Deferred Rent, the Court must deny Orix's Motion for Leave and for Enlargement of Time to File Administrative Expense Claim. Thus, the Court sees no reason to address the factors for allowing a late claim as set forth in the United States Supreme Court Opinion Pioneer Investment Services Company v. Brunswick Associates Limited Partnership. 507 U.S. 380 (1993).

Having found the bankruptcy estate not liable for the Deferred Rent, the Court now turns to Tango and Dave & Buster's liability for Deferred Rent. The Court initially notes that there seems no dispute that neither Tango nor Dave & Buster's were aware of the First Amendment to the Lease when the sale occurred. While there are no allegations that the Debtors deliberately misrepresented or omitted this information, it is clear that the Debtors, by not disclosing the First Amendment, violated the warranties set forth in the APA. This finding does not resolve the issues at stake however. Due to the No Survival of Representations and Warranties clause in Section 8 of the APA,

the Debtors' warranties expired at the closing of the sale on November 1, 2004. Thus, while Tango and Dave & Buster's may have possessed a breach of warranty action against the Debtors at one time, such action did not survive the closing.

Nevertheless, the issue remains whether Tango and Dave & Buster's are liable for the Deferred Rent. The resolution to this question rests with a single determination: if the Deferred Rent is considered a post-closing obligation, Tango and Dave & Buster's are liable for the Deferred Rent; conversely, if the Deferred Rent is considered a pre-closing obligation, then Orix should have objected to the Cure Notice, and it is estopped or has waived its claim through its failure to act.

Tango and Dave & Buster's take the position that the Deferred Rent is a pre-closing obligation for which it has no responsibility. Tango and Dave & Buster's make an essentially semantic arguments. Because the parties used the term "deferred" in the First Amendment, the Deferred Rent should be characterized as accruing in 2003, a date well before the sale closing. Furthermore, using the the definition of "Accrued Liability"as defined in *Black's Law Dictionary*, the Deferred Rent is chargeable for the 2003 accounting period, even though it was not payable until 2005.

This argument does not persuade the Court. While such an argument might succeed had the parties not executed the First Amendment, the fact is that the First Amendment was negotiated and executed between Jillian's and Orix. This First Amendment expressly and categorically changed the terms of the Lease, creating a new, modified contract. Under this contract, as modified, the Deferred Rent became an obligation due and owing in September 2005, not April and May 2003. Thus, notwithstanding the use of the term "deferred," the First Amendment created an obligation that was not due until a date after the sale closing. The APA provided that Tango would assume all

10

obligations under the Lease and amendments thereto "in respect of periods after the closing." Because the Deferred Rent constituted a debt becoming due after the sale closing, it falls under the category of Assumed Liabilities as used in the APA, notwithstanding any contrary *Black's Law Dictionary* definition. As an Assumed Liability, the responsibility to pay this debt rests with Tango and Dave & Buster's.

The Court has entered an Order this same date in accordance with the holding of this Memorandum.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: ) | | |
| JILLIAN'S ENTERTAINMENT HOLDINGS, et al. ) | Case No. 04-33192 | |
| Debtors ) | Chapter 11 | |
| _____ ) | | |
| ) | | |
| ORIX PLC HOUSTON VENTURE ) | A.P. No. 06-3129 | |
| Plaintiff ) | | |
| v. ) | | |
| STEVEN L. VICTOR, Plan Administrator; ) | | |
| JILLIAN'S OF HOUSTON, TEXAS, INC.; ) | | |
| TANGO ACQUISITION, INC.; ) | | |
| TANGO OF HOUSTON, INC.; and ) | | |
| DAVE & BUSTER'S, INC. ) | | |
| Defendants ) | | |

## ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

It is hereby **ORDERED** the Administrator's Motion for Summary Judgment is **GRANTED**; his Ninth Omnibus Objection to Claims is **SUSTAINED**; and the proof of claim filed by Orix is disallowed.

It is further **ORDERED** that the Motion for Leave and for Enlargement of Time to File Administrative Expense Claim filed by Orix is **OVERRULED**.

It is further **ORDERED** that Orix's Motion for Summary Judgment is **GRANTED** and Orix recover from Tango of Houston, Inc. and Dave & Buster's, Inc., jointly and severally, the sum of $233,875.00 plus all charges and interest allowed under the Lease as well as post-judgment interest at the legal rate and costs.

It is finally **ORDERED** that Tango of Houston, Inc.'s and Dave & Buster's, Inc.'s Motion for Summary Judgment is **DENIED.**